GOTTSCHALL, District Judge,
dissenting in part.
I agree in large part with the majority, and as a result I gladly join the opinion as to Parts II.A and II.C, as well as much of Part II.B. When the draft supplemental environmental impact statements (“SEISs”) for McCaslin and Northwest Howell were issued, the Fishel project was too indefinite to be meaningfully discussed; therefore, the Forest Service properly excluded the Fishel project from McCaslin’s and Northwest Howell’s cumulative impacts analyses. I agree that when new information about a future project becomes clear only after a draft EIS for a current project has already been issued, the agency is not required to amend the draft EIS’s cumulative impacts analysis to take account of the new information. (Maj. Op. at 527-28.) As the majority states, once the draft EIS has been issued and new information comes to light, the agency is required to “take a hard look at the new information,” apply a rule of reason, and make a decision whether to supplement.[3] (Maj. Op. at 528.) The agency must supplement when the new information “significantly alters the previously presented environmental landscape,” (Maj. Op. at 529 (citing 40 C.F.R. § 1502.9(c)(1))), and pursuant to Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989), the determination of whether new information “significantly alters the previ *534 ously presented environmental landscape” is at first instance a decision of the agency — a decision to which this court owes considerable deference. Thus, I agree with Marsh and the majority that once it has taken the required hard look, the agency’s decision not to prepare a supplement should not be set aside unless it is “arbitrary and capricious.” Id. at 374-75, 109 S.Ct. 1851.
Unlike the majority, however, I cannot find any evidence in this record that the Forest Service took the hard look which the law requires. Because nothing in the record justifies the Forest Service’s decision not to supplement the McCaslin and Northwest Howell SEISs to take account of Fishel, I find the agency’s failure to supplement arbitrary and capricious, and I disagree with Part II.B. of the majority opinion. For this reason, I cannot join in the majority’s decision to affirm the district court’s grant of summary judgment to the Appellees in this case.
On March 9, 2006 — after the draft SEISs for McCaslin and Northwest Howell were issued in January 2006, but before they were issued in final form in September 2006 — the Forest Service issued a scoping notice for the Fishel' project, which Judge Adelman described as a “formal proposal.”[4] In this proposal, Judge Adelman found, “the Forest Service identified the project’s boundaries, stated the project’s objectives, and identified the precise action it proposed to take.” Habitat Educ. Ctr. v. U.S. Forest Serv., 680 F.Supp.2d 1007, 1018 (E.D.Wis.2010). The Forest Service had also “estimated the number of acres that would be affected by the project and the volume of timber that would be made available for sale.” Id. For these reasons, Judge Adelman explicitly found that “the Fishel project was a reasonably foreseeable future action that could have been meaningfully discussed.” Id. The Forest Service has not taken issue with Judge Adelman’s finding that the Fishel project became “reasonably foreseeable” at this point, although it equivocates on the issue of whether the project could have been meaningfully discussed. It admits, however, that Fishel “was no longer entirely speculative.” (Br. for the Appellees at 42-43.) Appellants argue that once the Fishel project became reasonably foreseeable, the Forest Service should have prepared supplement's to the McCaslin and Northwest Howell SEISs to analyze the cumulative impacts of McCaslin and Northwest Howell, as affected by the upcoming Fishel project.
The majority concludes that the Forest Service satisfied its obligation to take a hard look at the impact of Fishel on McCaslin and Northwest Howell in two ways. First, the Forest Service “included in its cumulative impacts analysis for McCaslin and Northwest Howell an assumption that all future projects, including Fishel, ‘must be consistent with the protective requirements for [Regional Foresters’ Sensitive Species] of the 2004 Forest Plan,’ and that such projects ‘will not occur if their additive effects are unacceptable.’” (Maj. Op. at 529-30 (quoting Appellees’ *535 Supp. App. at 34).) Second, the Forest Service “made clear that the cumulative impacts of all three projects would be addressed in the Fishel project’s EIS.” (Id.)
With respect to the first, the Forest Service is merely stating that (a) it intends to comply with its Forest Plan, and (b) it will not approve future projects like Fishel if the additive effects of Fishel, McCaslin and Northwest Howell are “unacceptable.” This is nothing but a statement that the Forest Service intends to follow the requirement that it protect the Regional Foresters’ Sensitive Species outlined in the 2004 Forest Plan, which it is legally required to do. See 16 U.S.C. § 1604(i) (“Resource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans.”); 36 C.F.R. § 219.10 (“All site-specific decisions, including authorized uses of land, must be consistent with the applicable plan.”); Friends of Southeast’s Future v. Morrison, 153 F.3d 1059, 1068 n. 4 (9th Cir.1998) (“Here, 16 U.S.C. § 1604(i) plainly imposes a legal obligation on the Forest Service to ensure that timber sales are consistent with the relevant Forest Plan.”). With respect to the second — that the cumulative impacts of all three projects would eventually be addressed in the Fishel project’s EIS — the idea that consideration of any significant information can be deferred to a future project’s EIS is inconsistent with the design of NEPA. In the words of the Ninth Circuit, “NEPA is not designed to postpone the analysis of an environmental consequence to the last possible moment. Rather, it is designed to require such analysis as soon as it can reasonably be done.” Kern v. U.S. Bureau of Land Mgmt., 284 F.3d 1062, 1072 (9th Cir.2002). The regulations clearly state that an appropriate analysis of cumulative impacts requires that “the incremental impact of the [present] action” be “added to the past, present, and reasonably foreseeable future actions.” 40 C.F.R. § 1508.7. The law is clear that deferring a cumulative impacts analysis until a future EIS for another project is impermissible unless the agency has properly decided that deferral is scientifically justifiable.
The agency’s obligations in considering whether to prepare a supplement, and the court’s standard of review of the agency’s decision, were articulated clearly in Marsh. Marsh held that an agency’s decision not to supplement “is a classic example of a factual dispute the resolution of which implicates substantial agency expertise,” 490 U.S. at 376, 109 S.Ct. 1851, and courts “must defer to ‘the informed discretion of the responsible federal agencies.’ ” Id. at 377, 109 S.Ct. 1851 (quoting Kleppe v. Sierra Club, 427 U.S. 390, 412, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976)). The agency has a responsibility with respect to any new ' information, however, and that responsibility is to take a hard look at it, “regardless of its eventual assessment of the significance of [the] information”, id. at 385, 109 S.Ct. 1851. If major federal action remains to occur,[5] and the new information shows that the remaining action will affect the quality of the human environment in a significant manner or to a significant extent not already considered, a supplemental EIS is required. Id. If, after taking a hard look, the agency determines that the new information does not affect the quality of the human environment in'a significant manner or to a significant extent not already considered, the agency is not required to prepare a supplement, and its decision not to do so will be *536 upheld unless arbitrary and capricious. See id. at 377, 109 S.Ct. 1851.
In making the determination of whether the agency’s decision not to supplement was arbitrary and capricious, “the reviewing court ‘must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.’ ” Id. at 378, 109 S.Ct. 1851 (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). While the agency has considerable discretion in determining on what information to rely, “courts should not automatically defer to the agency’s express reliance on an interest in finality without carefully reviewing the record and satisfying themselves that the agency has made a reasoned decision based on its evaluation of the significance — or lack of significance — of the new information.” Id.
There is no indication in this record that the agency considered any relevant factors at all or made any reasoned decision based on its evaluation of the new information set forth in the Fishel “formal proposal”: the agency simply committed to follow its Forest Plan in the future and deferred consideration of the cumulative impacts of McCaslin, Northwest Howell, and Fishel to the Fishel EIS. Finding such statements sufficient to satisfy the agency’s hard look obligation is inconsistent with Marsh (where deference was found to be appropriate because the decision whether to supplement is based on “substantial agency expertise”), 490 U.S. at 376, 109 S.Ct. 1851, and the decisions of numerous courts of appeals. See, e.g., Natural Res. Def. Council, Inc. v. F.A.A., 564 F.3d 549, 561-62 (2d Cir.2009) (upholding an agency’s decision not to supplement because it had taken a hard look at new circumstances and analyzed scientific information relating to the ivory-billed woodpecker); Town of Winthrop v. F.A.A., 535 F.3d 1, 13 (1st Cir.2008) (upholding an agency’s decision not to supplement where the agency “ha[d] not ignored [certain environmental] concerns” and “decided to evaluate the issue fully ... alongside agencies with relevant expertise”); Hughes River Watershed Conservancy v. Glickman, 81 F.3d 437, 445 (4th Cir.1996) (concluding that an agency had not taken enough of a hard look when it chose not to supplement an EIS without “giv[ing] careful scientific scrutiny to the new information and explaining] why the new information did not require the preparation of a supplemental EIS”); Laguna Greenbelt, Inc. v. U.S. Dep’t of Transp., 42 F.3d 517, 529-30 (9th Cir.1994) (upholding an agency’s decision not to supplement where the agency took a hard look, relying on “substantial technical expertise possessed by two federal agencies charged with responsibility for the respective sectors of the affected environment”).
In short, I would agree that deference to the agency was appropriate had the agency taken the requisite hard look and determined that no supplementation was required. But I find no indication in the record that any look — hard or otherwise— was taken. I see only a decision to defer consideration of the cumulative impacts of the three projects to the cumulative impacts analysis of the future Fishel EIS. For this reason, I respectfully dissent.

. The Appellants indicate that the agency could choose to amend the cumulative impacts analysis in the draft EISs rather than prepare a supplement. (See Reply Br. at 14 ("Whether the Fishel project was incorporated into the cumulative impacts analysis in the Final EISs or whether the agency should have prepared a full-blown supplement to those EISs is not the question here. In this case, because the Forest Service failed to either include the Fishel timber sale project in the Final EISs’ cumulative impacts analysis or prepare a supplement, the Forest Service violated NEPA.”).) I do not intend to suggest that an amendment of the cumulative impacts analyses would be insufficient.

. Although Judge Adelman refers to the Forest Service's notice of March 9, 2006 as a “formal proposal,” the parties have described this March 9, 2006 notice as a “scoping notice.” (See Separate App. of Appellants at 3.) NEPA regulations contemplate a notice of intent, 40 C.F.R. § 1508.22; followed by a proposal, id. § 1508.23; followed by a scoping notice, id. § 1508.25; followed by the draft and final environmental impact statements. Id. § 1502.9(a) (noting that draft EISs "shall be prepared in accordance with the scope decided upon in - the scoping process”); § 1502.9(b) (noting that the final EIS "shall respond to comments” on the draft). The majority assumes, as do I, that this formal proposal constituted new information sufficient to trigger the hard look requirement.

. The parties have not disputed that major federal action remained to occur with respect to the Fishel, McCaslin and Northwest Howell projects.